**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BARRY A. CAMPBELL,                                   Case No. 1:13-cv-906

                    Plaintiff,                        Dlott, J.
          v.                                          Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

## REPORT AND RECOMMENDATION

### I. Introduction

#### A. Procedural Background in this Court

Plaintiff filed the above social security appeal *pro se* and *in forma pauperis* on December 18, 2013.  *See* 42 U.S.C. §405(g).  On April 8, 2014, the Commissioner filed and served its answer and a certified copy of the administrative record.  After Plaintiff failed to file a Statement of Errors as required by the due date of May 26, 2014, the undersigned filed a "show cause" order directing him to do so by June 19, 2014. Plaintiff filed a response to that order with an attached "Addendum," stating that he had previously filed an 18-page Statement of Errors when he initiated this lawsuit.

The Commissioner filed a response to the Plaintiff's "Statement of Errors Addendum" on July 24, 2014.   In that response, Defendant stated that the Commissioner was "unaware of any such filing" of a prior Statement of Errors, and therefore would address only the shorter "Addendum" filed on June 19, 2014.

The undersigned subsequently construed an earlier document filed by Plaintiff as a request for the appointment of counsel.  Additionally, the Court permitted Plaintiff to clarify and affirm that he intended an 18-page letter that he had filed at the

administrative level, before the Appeals Council, to serve as his original Statement of Errors in this Court. (Doc. 12, 14).

Although Plaintiff has no constitutional right to the appointment of counsel in this civil case, the undersigned referred this case to an attorney who participates in the District Court's Referral Panel of Attorneys for *Pro Se* Social Security Disability/SSI Appeals. Unfortunately for Plaintiff, no attorney was able to take his case and Plaintiff was advised on September 29, 2014 that he must continue to proceed *pro se*. (Doc. 15). Defendant was provided an opportunity to respond to the belated "affirmation" that Plaintiff intended his letter to the Appeals Council to serve as a Statement of Errors. (*See* Doc. 15, Tr. 1-6, 376-392). On October 27, 2014, Defendant filed a response reflecting Defendant's belief that "no additional response beyond its July 2014 'Memorandum in Opposition' ….is necessary." (Doc. 16 at 2). Plaintiff elected not to file any reply. (*See* Doc. 15, directing Plaintiff to file any reply by November 10, 2014).

For the reasons explained below, the undersigned now recommends that the Commissioner's finding should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

## B. Review of Administrative Record

Although Plaintiff proceeds *pro se* in this Court, Plaintiff previously was represented by counsel at the administrative level.

Born in September 1964, Plaintiff was 49 and remained (barely) in the "younger individual" age category from the time he first filed his application for Disability Insurance Benefits ("DIB") through the date of the Commissioner's last decision. Plaintiff graduated from high school and attended three years of college. His past

relevant work includes machine operation and inspection for an automaker, as well as an apprenticeship as a tool and die maker.  He also worked for three to four months as a customer service representative at the Bass Pro Shop, where his job duties included taking "tak[ing] care of inventory," inspecting boats as they came in, and "writ[ing] work orders for the mechanics in the shop to put such and such a motor on such and such a boat, [and] order stock."  (Tr. 69-70).  Plaintiff was laid off work when his employer filed for bankruptcy (Tr. 25), and received unemployment benefits from June 2010 through April 2012, during which time he continued to seek other employment.  (Tr. 63).

In the application filed on May 2, 2011, Plaintiff alleged a disability onset date of November 25, 2010.  His claim was denied initially and upon reconsideration, after which Plaintiff sought an evidentiary hearing.  A hearing was held on December 12, 2012, at which Plaintiff appeared with his attorney at the time, Michael Porter, and presented testimony.[1]  An impartial vocational expert also testified. (Tr. 57-95).  On February 5, 2013, Administrative Law Judge ("ALJ") Mary Withum filed a written decision in which she determined that, despite several severe impairments, Plaintiff remained capable of full-time employment and therefore was not disabled.  (Tr. 38-51).  Plaintiff's counsel filed a Notice of Appeal to the Appeals Council, which denied further review, leaving the ALJ's February 2013 decision as the Commissioner's last decision.

In her decision, ALJ Withum determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date, and that he had severe impairments of obesity, headaches, dermatomyositis, degenerative disc disease,

---

[1]A copy of a fee agreement in the record reflects that Plaintiff retained the "Law Offices of John T. Nicholson" to represent him at the administrative level.  Michael Porter, an attorney in the same law firm, is listed as jointly representing Plaintiff.  (Tr. 96-97).

depression, anxiety, and opioid addiction. (Tr. 40). However, she found that Plaintiff's severe impairments did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 41). The ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a range of light work, with the following additional restrictions:

> [T]he claimant must be allowed to alternate between sitting and standing at will provided that he is not off task more than 5% of the work period. The claimant can never climb ladders, ropes, or scaffolds, and must avoid all exposure to unprotected heights. The claimant must avoid concentrated exposure to excessive sunlight. The claimant's work is limited to simple to moderately complex tasks. The claimant can only occasionally interact with the public, coworkers, and supervisors.

(Tr. 44). Based upon additional testimony provided by the vocational expert, the ALJ found that Plaintiff could continue to perform past relevant work as a stock control clerk, and therefore was not disabled. Alternatively, the ALJ found that Plaintiff was not disabled because he could perform other jobs that exist in significant numbers in the national economy. Specifically, the ALJ determined that Plaintiff could perform representative occupations at the light exertional level of stock clerk, shipping and receiving clerk, or general office clerk, or representative sedentary level jobs including general office clerk, auditing clerk, or word processor. (Tr. 50-51).

Plaintiff's letter to the Appeals Council, resubmitted as a Statement of Errors before this Court, asserts that the ALJ committed more than twenty errors. His "Statement of Errors Addendum" repeats those errors more succinctly, but still includes twenty separate bullet points. Reviewing both documents, Plaintiff's claims are as follows: (1) He has disabling obsessive compulsive disorder that slows him down "in everything I do"; (2) his dermatomyositis and/or headaches are both disabling at the

Listing level and because of the limitations they cause; (3) his lawyer did a poor job representing him; (4) his depression is disabling; (5) the number of days per week he would need to take off both for depression and for headaches is disabling; (6) the ALJ failed to adequately consider the combination of his impairments; (7)  the ALJ failed to adequately consider his insomnia, which was diagnosed by Dr. Halley and supported by specific medical records (Tr. 382); (8) his opioid addiction is in remission; (9) he never had prior work as a stock control work, but only performed physical labor in excess of "light" work; (10) his degenerative disc disease should meet the Listing level because he has developed excruciating sciatica "if I arch my back to the rear."  (Tr. 382, 388); (11) the ALJ ignored his carpal tunnel syndrome (Tr. 383); (12) he is disabled under Listing 14.05 because he has problems with joint mobility and intestinal motility (Tr. 383); (13) He meets Listing 14.05E because of his severe fatigue and limitations in daily living; (14) the ALJ used a feminine pronoun to refer to him; (15) he meets the "B" criteria for a mental health listing based upon "at least three episodes of decompensation." (Tr. 384); (16) the ALJ overstated his social relationships and activities of daily living; (17) the ALJ improperly discounted his concentration, persistence or pace limitations; (18) the ALJ erred in her negative credibility assessment; (19) the ALJ misconstrued his testimony concerning the amount of weight he can lift; (20) the ALJ mistakenly stated that Plaintiff wishes to quit Suboxone; (21) the ALJ improperly discounted his pain level; (22) the ALJ improperly faulted him for failing to follow prescribed treatment and/or call additional doctors regarding his Suboxone program; (23) the ALJ improperly discounted the finding of three state physicians that "support my disability" and further failed to obtain statements from his treating physicians that he was disabled. (Doc. 10 at 5).

Construing Plaintiff's *pro se* Statement and Addendum liberally, he argues that the ALJ's decision is not supported by substantial evidence, because errors occurred at multiple steps of the sequential analysis required by applicable social security regulations. As stated, the Defendant filed both a Memorandum in Opposition and a Supplemental Memorandum, (Docs. 11, 16) arguing that substantial evidence does exist to uphold the ALJ's decision, and that any error that may have occurred was harmless. For the reasons stated, the ALJ's decision should be affirmed.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

6

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §404.1512(a).

### B. Specific Errors

For the convenience of this Court, the undersigned has reordered and combined Plaintiff's myriad assertions of error into six claims, in a manner more consistent with

the five-step sequential analysis.

### 1. The Alleged Failures of Counsel

Plaintiff lambasts his privately retained attorneys, arguing that he "had the misfortune of picking the wrong lawyer out of the phone book" and chose someone who "did absolutely nothing for me," and sent "his associate" to the hearing before the ALJ who Plaintiff believes may have been "[j]ust a student assistant, I think," despite being "listed as an attorney in the court paperwork."[2]  Plaintiff argues that he lost his case at the administrative level due to counsel's incompetence.  He asserts that he has been unable to retain new counsel due to the fact that his former counsel lost his administrative case.  (Doc. 14 at 4).

Plaintiff has no constitutional right to the appointment of counsel.  Although the undersigned unsuccessfully attempted to obtain counsel for Plaintiff in this Court, the fact that Plaintiff blames the performance of prior counsel does not provide any basis for reversing the ALJ's decision.

### 2. Step 2 Errors

Several of Plaintiff's assertions of error relate to Step 2 – the ALJ's determination of whether his impairments were "severe."  Plaintiff argues, for example, that he has disabling obsessive compulsive disorder ("OCD") that slows him down "in everything I do," that the ALJ erred by failing to find that his insomnia and carpal tunnel syndrome constitute additional severe impairments.  As many courts have observed, an ALJ's failure to list additional impairments as severe at step two generally will not provide a

---

[2]Mr. Porter appears to have been licensed to practice law prior to the hearing.  However, a non-attorney also may represent a claimant before an ALJ.

basis for reversing the Commissioner's decision. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987); *see also Fisk v. Astrue*, 253 Fed.Appx. 580, 583 (6th Cir.2007) ( "[W]hen an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does not constitute reversible error."); *Riepen v. Com'r*, 198 Fed.Appx. 414, 415 (6th CIr.2006); *see also Franson v. Com'r of Soc. Sec.*, 556 F. Supp. 2d 716, 730 (W.D. Mich. 2008).

Consistent with that general rule, the undersigned finds no reversible error on the record presented. Plaintiff fails to point to any specific records that would support a greater limitation for OCD than the ALJ already considered in finding his anxiety and depression to be "severe" mental impairments. For similar reasons, the undersigned finds no basis to reverse or remand based on the ALJ's failure to include as severe impairments Plaintiff's alleged insomnia or carpal tunnel syndrome ("CTS").

The ALJ stated that there was "no official diagnosis for insomnia" in Plaintiff's medical records. (Tr. 41). Plaintiff asserts in his 18-page letter that there are three references in progress notes of his therapy sessions to his insomnia. However, those references do not demonstrate error, as Plaintiff points to no official diagnosis by any physician, or a sleep study that would confirm a severe limitation.[3] His therapist's brief notations do not confirm either a formal diagnosis, or that his insomnia is so severe that it consistently results in more than minimal functional limitations that impact his ability to work. Likewise, Plaintiff's own testimony that he used to have carpal tunnel but that it

---

[3]Assuming that Dr. Halley has prescribed medication as Plaintiff claims, the existence of a sleeping pill prescription does not definitively prove that Plaintiff's insomnia more than minimally impacts his ability to work.

resolved with physical therapy, notwithstanding some continuing difficulty gripping and twisting, (Tr. 83-84), supports the ALJ's conclusion with respect to that diagnosis, as does the fact that there are no treatment records for CTS following Plaintiff's onset date. (Tr. 41). Finally, Plaintiff's suggestion that the ALJ also erred by listing his opioid addiction as severe, to the extent that addiction (to prescription painkillers) is in remission, provides no ground for reversal of this case.

### 3. Step 3 Errors

Plaintiff argues that the ALJ erred in failing to find that he meets or equals any one of a number of Listings, which would have entitled him to a presumptive disability finding. He argues specifically: (a) his degenerative disc disease meets Listing level severity because he has developed excruciating sciatica "if I arch my back to the rear." (Tr. 382, 388); (b) his headaches meet a Listing; (c) he is disabled under Listing 14.05 because of his joint mobility and intestinal motility (Tr. 383); (d) he meets Listing 14.05E because of his severe fatigue and limitations in daily living; (e) he meets the "B" criteria for a mental health listing based upon "at least three episodes of decompensation" (Tr. 384); and (f) his combination of impairments should have resulted in a finding that he equals a Listing.

Plaintiff's arguments fail to overcome the substantial evidence that exists to support the ALJ's determination that he does not meet or equal any of the referenced Listings. With respect to his degenerative disc disease, Listing 1.04A for Disorders of the spine requires evidence of nerve root compression. Although Plaintiff's MRI showed a disc bulge that touched the S1 nerve root as well as some protrusion of a root at the L4-L5 level, the listing clearly requires a positive straight leg raise test which was not

10

present. (Tr. 41).  Plaintiff fails to point to any record to contradict the ALJ's findings, which are supported by substantial evidence.  For similar reasons, Plaintiff fails to show that the ALJ erred by finding he does not meet Listing 1.04B, which requires spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or Listing 1.04C, which requires "[l]umbar spinal stenosis resulting in pseudoclaudication." Plaintiff's MRI did not reference any spinal arachnoiditis, and specifically stated there was no spinal stenosis.  (Tr. 41).

Plaintiff generally contends that the ALJ should have found that his headaches were of listing level severity.  As the ALJ noted, however, there is no applicable Listing for headaches.

With respect to Plaintiff's dermatomyositis, the undersigned also finds no error. Plaintiff argues that he can demonstrate that he meets or equals one or more of the categories under Listing 14.05, and expresses incredulity that his claim has been repeatedly denied despite his diagnosis of "**an often fatal, usually precancerous, severe, chronic disease**." (Tr. 377, emphasis original).[4]  A diagnosis alone says little about an individual's limitations, and Listings provide a presumption of disability only for those with the most severe limitations.  For example, Listing 14.05A for dermatomyositis requires difficulties in ambulation, and Listing 14.05D requires diffuse calcinosis with limitation of joint mobility or intestinal motility.  Construing Plaintiff's argument liberally, he contends that he meets the Listing because he is on steroids, and without that medication, he is in too much pain to climb up or down stairs. However, Listing 14.05A

---

[4]A FAQ sheet by the National Institutes of Health provides a less pessimistic overview, stating that "[m]ost cases of dematomyositis respond to therapy."
http://www.ninds.nih.gov/disorders/dermatomyositis/dermatomyositis.htm (accessed 11/25/14).

very specifically requires proximal limb-girdle (pelvic or shoulder) muscle weakness, resulting in an inability to ambulate effectively or inability to perform fine or gross movements effectively as more specifically defined in 14.00C6 and 14.00C7.  As the ALJ noted, Plaintiff's records reflect that he was able to ambulate with a normal gait and without aids- which would preclude a finding of either Listing 14.05A or one portion of Listing 14.05D.  (Tr. 41).  Similarly, there is no record of significant neurological deficits in any extremities. (Tr. 41).

Plaintiff argues that he can demonstrate intestinal motility issues sufficient to meet Listing 14.05B or 14.05D because he has had a prescription for Prilosec or Nexium for "many" years, often has diarrhea and/or constipation, and that he has "recently" experienced gagging or choking in his sleep. However, Listing level severity is generally reserved for symptoms that are not abated by medication.  Notwithstanding Plaintiff's testimony of difficulty swallowing, Plaintiff fails to point to any medical records to support Listing level severity of that alleged symptom.  Listing 14.05C, which requires impaired respiration, does not appear applicable at all, since there is no indication that Plaintiff suffers from any breathing difficulties.

Plaintiff argues most strenuously that he meets or equals Listing 14.05E, which requires - at a minimum - repeated manifestations of dermatomyositis, "with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)." (Tr. 42).  The ALJ acknowledged that Plaintiff testified to fatigue due to insomnia, but found no evidence in the record of any "fever, malaise or weight loss." (Tr. 42).  Plaintiff argues in his Statement of Errors that he does suffer from "malaise" but points to no records to contradict the ALJ's findings, which I find to be well-

12

supported.[5]

Even if Plaintiff could demonstrate both severe fatigue and malaise sufficient to satisfy Listing 14.05E, however, 14.05E requires Plaintiff to additionally show at least one of the following at the marked level:  (1) limitation of activities of daily living, (2) limitation in maintaining social functioning, or (3) limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace."  (Tr. 41).  In addition to showing only one constitutional symptom (fatigue due to insomnia), the ALJ reasoned that Plaintiff did not meet Listing 14.05E because he "does not have any marked limitations in daily living, social functioning, and concentration, persistence, or pace." (Tr. 42).  Plaintiff argues that his mental health therapy records provide evidence of "marked" deficiencies in all of the referenced areas.  For the reasons stated below, the undersigned finds the ALJ's analysis to be within the acceptable "zone of choice" and supported by substantial evidence.

The "marked" impairments required to show that Plaintiff meets or equals Listing 14.05E parallel the findings required to show that Plaintiff meets or equals mental health Listings 12.04 (affective disorders), 12.06 (anxiety related disorders), and/or 12.09 (substance addiction disorders).  Because Plaintiff aslo argues that the ALJ erred by failing to find "marked" impairments under the "paragraph B" criteria applicable to mental disorders, and/or erred by failing to find repeated episodes of decompensation of extended duration, the following analysis applies to both Listing 14.05E and to the referenced listings for mental disorders.

---

[5]Listing 14.05E clearly requires two separate constitutional symptoms.  While Plaintiff appears to argue that fatigue and malaise are one and the same, and the definition of malaise may indeed be similar, the lack of records to support malaise as a distinct symptom supports the ALJ's finding.

The ALJ determined that Plaintiff has only "moderate" restrictions in activities of daily living and social functioning, only "mild" restrictions in concentration, persistence or pace, and no episodes at all of decompensation.  Plaintiff first asserts that he does have "at least three episodes of decompensation" (Tr. 384) but he provides no citation to the record of such evidence, which neither the ALJ nor the undersigned could locate.[6]  It is possible that Plaintiff may not fully understand the Listing definition of repeated episodes of decompensation, which typically involve extended psychiatric hospitalizations of more than 2 weeks, and occurring at least once every four months. For similar reasons (the lack of any contrary records), the undersigned finds substantial evidence to support the ALJ's determination that Plaintiff has only mild difficulties with concentration, persistence or pace.  Plaintiff alleges that his mental health records corroborate "problems in this area" but the ALJ's finding of mild restrictions adequately accounts for those "problems."

Plaintiff emphasizes his limited social activities and restrictions of daily activities, arguing vehemently that he is "COMPLETELY cut off from normal daily living and social function" and has "gone from being the life of the party to an absolute recluse over the course of the last decade." (Tr. 383, capitalization original).  With all due respect to Plaintiff's rating of his own degree of limitations, the undersigned finds no error in the ALJ's analysis that Plaintiff suffered from "moderate" rather than "marked" restrictions. Regardless of Plaintiff's assertions of difficulties over the "last decade," he continued to work full-time during most of that time period, and claims disability only beginning in

---

[6]Plaintiff also makes reference to the ALJ's determination having sent him into "another episode of severe depression," with suicidal ideation. (Tr. 378).  This Court generally cannot consider new evidence beyond the date of the Commissioner's last decision.  However, Plaintiff is urged to continue mental health treatment as appropriate.

November 2010.  He was laid off from work in June 2010 based not on his symptoms, but upon his employer's bankruptcy, and continued to receive unemployment benefits and to seek full-time employment through April 2012.  *See Workman v. Com'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004)(holding that adverse credibility determination is supported by application for unemployment benefits during the same time period).  In his Statement, Plaintiff asserts that he has not visited extended family who live more than an hour away more often "than every five to six weeks" – again, not because of his mental limitations – but because he cannot afford the gas.  (Tr. 384). Such evidence and the record as a whole supports the ALJ's determination that Plaintiff had only "moderate" restrictions in activities of daily living and social functioning. Plaintiff can bathe and clothe himself, prepare simple meals, perform car maintenance and household repairs, and can drive most days.  He watches television, spends time on the computer, goes grocery shopping and fishes for bass once or twice per month. (Tr. 42, 47, *see also* Tr. 347-50).

Plaintiff complains that the ALJ erred by finding that he maintains "close friendships," based in part on an erroneous finding that friends "helped him pay his mortgage for the last two years."  Plaintiff concedes that he testified that he received financial help from family and friends over the last few years in paying bills, but argues that has not been "a regular source of support" and is not from "those whom we would have considered social friends" but instead "members of the congregation who felt they should exercise their Christian values by helping us a little."  (Tr. 384).  Plaintiff maintains that he "just didn't think I needed to explain all of that during the hearing, so I simply said we had gotten help from friends," leading to the ALJ's asserted error.

15

However, the undersigned finds no reversible error.  Plaintiff also testified that his passion is bass fishing, and alluded to some associated social activity: "I am fishing.  I was, you know, president of my bass club, and vice president of other – you know, I – it's who I am.  When I talk to somebody that's, that's what I am…"  (Tr. 77).  The ALJ was entitled to take Plaintiff's testimony at face value at the hearing, and evaluate it on the basis of the record as a whole.

The last "Step 3" error asserted by Plaintiff is that the ALJ failed to adequately consider the combination of his multiple impairments.  While the ALJ's discussion was brief, for the reasons stated by the Defendant, her analysis does not constitute reversible error.

### 4.  Step 4 and Step 5

Step 4 of the sequential analysis requires the Commissioner determines whether or not the claimant can still perform his past relevant work.  To do so, the ALJ makes a determination of the plaintiff's residual functional capacity based upon the record as a whole.  If a plaintiff's RFC prevents him from performing his past relevant work, then at Step 5, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  Here, the ALJ made alternative findings that Plaintiff could still perform one of his past relevant jobs, but that even if he could not, he could still perform other full-time work.

### a.  Medical Opinion Evidence

Plaintiff broadly attacks the ALJ's evaluation of the medical opinion evidence and assessment of his RFC.  He asserts that the ALJ improperly discounted the finding of three state physicians that "support my disability" and further failed to obtain statements

16

from his treating physicians that he was disabled.

It is Plaintiff's burden to prove disability. Following the ALJ's decision, Plaintiff submitted a two sentence statement from his primary care physician, Anita Want, M.D., to the Appeals Council in further support of his disability claim.   The April 9, 2013 statement reads in total:  "I have been treating [Plaintiff] for many years now as his primary care physician.  I have a thorough knowledge of his overall medical condition, and it is my stated medical opinion that Mr. Campbell is disabled and unable to work." (Tr. 1087).  The Appeals Council did not consider Dr. Wantz's statement because it did not find it to constitute new and material evidence.   For the same reasons, the statement of Dr. Wantz cannot be considered by this Court.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).  In any event, the statement is completely unsupported and unexplained, and does not constitute an opinion entitled to controlling weight even if it had been timely submitted, because the ultimate issue of disability is reserved to the Commissioner.

In addition, and contrary to Plaintiff's assertion, the medical opinion evidence that was actually before the ALJ did not support his claim.  A brief assessment by Dr. Wantz dated July 1, 2011 appears in the record at Tr. 689.  Dr. Wantz's earlier one-page statement refers to her treatment of Plaintiff's depression since February 3, 2006 – a date that precedes by several years Plaintiff's alleged disability onset date.   The statement indicates that she prescribed medication but did not refer Plaintiff to any mental health specialist, and opines that Plaintiff has some functional restrictions to the extent that he "does not interact with people much outside of his home."  (Tr. 689, emphasis added).  Dr. Wantz's statement does not specify the degree of limitation and

is not inconsistent with the ALJ's assessment of only "moderate" limitations.  In addition, she is not from a mental health provider, and her statement fails to differentiate the time period when Plaintiff still worked full-time.

A psychological assessment dated July 29, 2011 by Taylor Groneck, Psy.D, provides a more complete psychological review.  Dr. Groneck found Plaintiff to exhibit average to high average intelligence, and diagnosed Plaintiff with "moderate" and recurrent depression.  He assessed Plaintiff's current GAF at 51, again consistent with "moderate" symptoms and with the ALJ's conclusions.  (Tr. 695-705).  Dr. Groneck further opined that Plaintiff would have no limitations in understanding, remembering, and carrying out instructions, had no history of limitations in maintaining attention and concentration or persistence and pace, but "may" have impaired focus in the workplace due to his "physical symptoms and panic attacks."  (Tr. 703).  State agency physicians Drs. Freihofner and Teague also opined that Plaintiff could perform light work, and even psychological agency consultants, Drs. Tishler and Lewin (whose opinions the ALJ gave little to no weight), assessed Plaintiff with no more than moderate impairments.  (Tr. 47-48).

### b.  Ability to Perform Work at the Light Exertional Level

Plaintiff additionally complains that the ALJ misconstrued his testimony concerning the amount of weight he can lift.  Plaintiff testified in response to a query by the ALJ that he could "probably" lift up to 40 pounds, but argues that the ALJ erred by concluding he could lift that amount frequently.  However, the ALJ actually limited Plaintiff to the "light" exertional category, defined as work involving lifting no more than 20 pounds at a time and "frequent" lifting or carrying only up to 10 pounds.  The ALJ's

finding as to Plaintiff's lifting ability was well supported not only by Plaintiff's testimony and the medical records as a whole, but by the opinions of the state agency consultants.

### 5. Miscellaneous Errors

Plaintiff complains bitterly about the ALJ's occasional misuse of a feminine pronoun to refer to him.  The error likely occurred due to the ALJ's re-use of standard law or analysis used in other opinions.  Of course, the use of such standard paragraphs does not make the ALJ's legal analysis inapplicable.  Reviewing the record as a whole, the undersigned concludes that the referenced typographical errors provide no basis for remand.

Plaintiff also argues that the ALJ misrepresented his prior work as that of a "stock clerk" when in fact he has always performed physical labor and not any type of office position or "cake job."  (Tr. 381).  Plaintiff finds the ALJ's statement to be "an injustice to the way I've always approached work." (Tr. 382).  While conceding that his "last job…did include many of the duties of a stock control clerk," he protests that his jobs have always "required much more physical labor."  (Tr. 380-381).  Defendant admits that Plaintiff's prior work at the Bass Pro Shop - the job characterized by the VE as "stock control clerk" - was that of a customer service representative.  (Tr. 69, 88, 91). However, any error in the VE's description was waived based upon Plaintiff's failure to object at the hearing, and further, was harmless in light of the ALJ's alternative finding that Plaintiff could perform the position of stock control clerk even if he could no longer perform his prior work.

Plaintiff points out that the ALJ mistakenly stated that he was seeking to quit

Suboxone.   (Tr. 45).   Again, the undersigned finds this minor "error" of no real consequence.   The point that the ALJ was making with her brief reference was that Plaintiff had not called a list of doctors provided to him.  While Plaintiff argues that there were ample valid reasons for his inaction, that issue is one of many that goes to credibility.

### 6. Credibility and Assessment of Pain

All of Plaintiff's remaining errors fall within the general rubric of attacks on the ALJ's credibility assessment.   Plaintiff argues that the evidence of record does not fully reflect the extent of his disability, and/or that the ALJ unfairly disregarded his subjective complaints.  The ALJ partially discounted Plaintiff's testimony, to the extent that Plaintiff testified that his impairments and pain resulting therefrom would require frequent absences and/or completely disable him from all work.  (Tr. 45, 47-49).   The ALJ provided a thorough and detailed analysis for that finding, which the undersigned finds no need to repeat.  The ALJ did not discount all of Plaintiff's subjective complaints of pain; in fact, she found that Plaintiff should be allowed to alternate between sitting and standing at will, and that he could be off task up to five percent of the work period.  (Tr. 49).

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).   Further, a credibility determination cannot be disturbed "absent a compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).   Thus, it is

proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence.  *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).  Not only did the ALJ in this case provide adequate reasons based on her review of the records and Plaintiff's own testimony for her credibility finding, but she specifically commented on her observations of Plaintiff's demeanor at the hearing.  (Tr. 47).

### III.  Conclusion and Recommendation

For the reasons discussed above, and because it is supported by substantial evidence, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** and that this case should be **CLOSED**.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BARRY A. CAMPBELL,                                    Case No. 1:13-cv-906

               Plaintiff,                            Dlott, J.
     v.                                             Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).